In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 07-3582

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ARMANDO GARCIA,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 06 CR 292—**Rudolph T. Randa,** *Chief Judge.*

_____

ARGUED APRIL 14, 2008—DECIDED JUNE 3, 2008

_____

Before FLAUM, EVANS, and TINDER, *Circuit Judges.*

EVANS, *Circuit Judge.* A jury convicted the defendant, Armando Garcia, of possession with intent to distribute 500 grams or more of cocaine; he was subsequently sentenced to 97 months imprisonment. Garcia now appeals three of the district court's rulings. His primary complaint—which consumed the entire discussion at oral argument—is that the district court should have suppressed evidence seized during the execution of a search warrant at his girlfriend's apartment because the warrant lacked probable cause. The magistrate judge (Aaron E. Goodstein) agreed with Garcia and recom-

mended that the motion to suppress be granted. The district judge (Rudolph T. Randa), however, found that the warrant was supported by probable cause and, in the alternative, even if probable cause was lacking, the "good faith" exception to the exclusionary rule applied and the evidence should not be suppressed.

On October 30, 2006, Milwaukee County Court Commissioner Barry Slagle issued a search warrant based entirely on the affidavit of Detective David Baker. The affidavit was of the "fill-in-the-blanks" variety (which, we were troubled to hear, is regularly used in Milwaukee County) and stated that a confidential informant was inside Garcia's residence and, within 72 hours beforehand, observed "an off white powdery substance packaged in a plastic bag in the living area of the house[.]" Based on the informant's past involvement in the sale of controlled substances and personal experience, the informant believed the white substance he saw was cocaine. The affidavit also stated that Baker believed that the informant was credible because he had previously provided officers with information that led to the arrest of "more than two" fugitives and to the arrest and conviction of one other person in relation to drug trafficking.

Law enforcement officers executed the search warrant the same day it was issued. Upon breaching the door, they found Garcia's girlfriend, Gabriela Ordoñez, holding a baby in the living room. They then moved to the bedroom and found Garcia. As they entered, Garcia dove for the bed and began reaching under the mattress. The officers then placed Garcia in handcuffs and searched him; they found approximately $1,000 in cash and a small quantity of cocaine in his pockets.

After securing the apartment the officers began their search. In the bedroom where they had located Garcia they noticed a large piece of wood on the floor; the wood was discovered to be the cover to an (open) access panel on the wall. Inside the panel the officers found four individually wrapped kilograms of cocaine. Under the mattress where Garcia had been reaching they found a loaded .38 caliber handgun. In the bedroom closet they found a locked safe containing five bags of cocaine totaling 132 grams, approximately $25,000, a 2000-gram capacity scale, an insurance card bearing Garcia's name, other papers bearing Garcia's name, a gold bracelet with "Garcia" printed on it, and drug notes. The officers also found cocaine residue on a wooden bench in the middle of the floor. Under the bench was a five-pound capacity scale. In the hall closet the officers found a baggie of cocaine near a pill bottle bearing Garcia's name.

During the search Garcia told an officer that he lived at the residence and that Ordoñez had nothing to do with the cocaine. Later, at the police station, the officers interviewed Garcia after advising him of his *Miranda* rights. During that interview Garcia admitted to living at the apartment with Ordoñez. He said that the $25,000 found in the safe belonged to him but that he had earned it selling cars. Garcia admitted that he regularly used cocaine but did not claim ownership of the four kilograms found in the bedroom wall.

Based on this evidence, a grand jury returned a two-count indictment charging Garcia with possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c).

The district court set a deadline of November 29, 2006, for the filing of pretrial motions. On that day, Garcia, through his attorney, Andres Velez, filed several motions, including a suppression motion challenging the search warrant. On December 13, 2006, while those motions were pending, attorney Jeffrey Jensen substituted for Velez as defense counsel. Jensen did not file additional motions or ask the court to extend the deadline.

On December 21, 2006, the magistrate judge recommended that the motion to suppress be granted. The government objected. The district court ultimately denied the motion to suppress on March 14, 2007. Three weeks later the district court issued an order scheduling the case for trial in July. At that point, Jensen filed a motion to compel the government to disclose the identity of the confidential informant. The district court denied the motion as untimely.

At trial, Detective Baker was called as a witness. On direct examination, Baker stated that on October 30, 2006, he was conducting an investigation of a drug source in Milwaukee. When the government asked Baker if he was "able to identify who that drug source was" or "got a name for the person [he was] investigating," Jensen objected on hearsay and Confrontation Clause grounds. The court sustained the objection, and the government rephrased its question by asking Baker, "[W]hen you applied for that search warrant, did you have a name that you had affiliated that location with?" Jensen objected again, but the court ruled that the question was proper because Baker could testify as to the name on the warrant. Baker then stated that the name on the warrant was "Armando Garcia."

Later, Garcia testified in his own defense, contradicting several of his earlier statements to the police. He stated that he was staying with Ordoñez only occasionally, not living with her. He disclaimed knowledge of the bedroom safe, saying that the money and papers found in it did not belong to him. He admitted that the gold "Garcia" bracelet found in the safe was his, but he had no explanation for how it got there. He denied knowing about the four kilograms of cocaine found in the bedroom wall and opined that someone else must have left them there. The jury returned a verdict of guilty on count one (the drug charge) and not guilty on count two (the firearm charge).

Because the search warrant is the primary issue in this case, we begin with Garcia's other two challenges, neither of which requires much discussion. Garcia first argues that the district court should have granted his motion to compel disclosure of the identity of the confidential informant who provided the information for the search warrant. We review these rulings for an abuse of discretion. *United States v. Weaver*, 882 F.2d 1128, 1136 (7th Cir. 1989).

Rule 12(c) allows the district court to set deadlines for filing pretrial motions. Fed. R. Crim. P. 12(c). A party waives any pretrial request if it fails to abide by this deadline; the court may, however, grant relief for "good cause" shown. Fed. R. Crim. P. 12(e). The government argues that Garcia has not made this showing. We agree. In his motion to compel, Garcia made no attempt to establish good cause for the late filing. After the district court denied the motion as untimely, he again made no attempt to explain the delay or request reconsideration.

On appeal, Garcia glosses over these facts and offers two "obvious" reasons for the late filing. First, he argues

that he was not required to file the motion earlier because the magistrate judge had recommended that the evidence be suppressed. But parties are not entitled to wait and see how a court rules on one motion before making another. Second, he argues that switching lawyers was "cause" for the delay. But Jensen never requested a new deadline and only filed the motion to compel after receiving the trial date—that is, almost 4 months after substituting in as counsel. Because this is not "good cause," the district court did not err in denying the motion as untimely.

Garcia's other more minor complaint is that the district court should have sustained his objection to Baker's testimony that the name appearing on the face of the search warrant was Garcia's. He claims that Baker's testimony was hearsay, violated his rights under the Confrontation Clause, and went to the heart of his defense that he was not sufficiently connected to the apartment and therefore didn't know about the four kilograms of cocaine. Even if the jury was exposed to evidence that was not properly before it, however, a defendant is not automatically entitled to relief. *United States v. Gonzalez*, 319 F.3d 291, 297 (7th Cir. 2003). A new trial is mandated only where there is a reasonable possibility that the evidence had a prejudicial effect—that is, where the error is not harmless. *Id.*

We can save the constitutional inquiry and decide this issue on harmless error grounds. Garcia was found in the bedroom of the apartment with four kilograms of cocaine in plain view. In the same room, the officers found a safe containing five bags of cocaine, approximately $25,000, a 2000-gram capacity scale, an insurance card bearing Garcia's name, other papers bearing Garcia's

name, a gold bracelet with "Garcia" printed on it, and drug notes. The officers also found cocaine residue on a wooden bench in the middle of the floor; under the bench was a five-pound capacity scale. On top of that, Garcia told the officers that he lived at the residence, that the $25,000 found in the safe belonged to him, and that Ordoñez had nothing to do with the cocaine. This evidence overwhelmingly ties Garcia to the apartment and renders the jury's exposure to the name on the search warrant, even if improper, harmless beyond any reasonable doubt.

We now turn to Garcia's primary argument that the district court should have suppressed the evidence seized at the apartment because the search warrant was not supported by probable cause. Recently, in *United States v. McIntire*, 516 F.3d 576 (7th Cir. 2008), we clarified our complex standard of review on this issue. A district court's findings of historical fact are reviewed for clear error, but its legal conclusions are reviewed without deference. On the mixed question whether the facts add up to probable cause, we give no weight to the district judge's decision but "great deference" to the conclusion of the judge who initially issued the warrant. *Id.* at 578. Here, the district court made no findings of fact, so the appropriate inquiry is whether, with the benefit of "great deference," the issuing judge acted on the basis of probable cause.

Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Jones*, 208 F.3d 603, 608 (7th Cir. 2000). Where probable

cause is based on information supplied by an informant, we consider several factors: "(1) the extent to which the police have corroborated the informant's statements; (2) the degree to which the informant has acquired knowledge of the events through firsthand observation; (3) the amount of detail provided; and (4) the interval between the date of the events and police officer's application for the search warrant." *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002).

On balance, we agree that a sensible judge could find that the affidavit here set forth sufficient facts to establish probable cause. The information obtained from the informant was based on firsthand observations. The affidavit specifically stated that the informant had been inside the apartment and had observed a substance he believed to be cocaine, packaged in a plastic baggie, in the living room. The affidavit also explained that the informant believed the substance was cocaine because he had been involved in selling cocaine in the past. The time lapse between the officers acquiring of the information and their application for the warrant—no more than 72 hours—was short. And the affidavit provided information to establish the credibility of the informant: the informant had previously provided information leading to the arrest of at least three other individuals.

Nevertheless, we hesitate for two reasons. First, as the government concedes, the affidavit lacks much detail from the informant. It does not state, for example, how the informant came to be inside the apartment, who was in the apartment at the time, or how much cocaine he saw. We agree with the government that, under a totality-of-the-circumstances analysis, this information is not *required* to establish probable cause, but it certainly would

have helped. We also recognize that the disclosure of details surrounding the informant's presence at a location makes the identity of the informant more likely to be discovered. But surely some of this information could have been provided without compromising the informant's safety.

Our second cause for concern is that the affidavit was, as we said, on a "fill-in-the-blanks" form. Although "[an] affidavit is [not] invalid to support a search warrant simply because it ha[s] a preprinted format," *United States v. Romo*, 914 F.2d 889, 898 (7th Cir. 1990), a pre-prepared affidavit leads to errors and omissions. For example, paragraph 9 of Baker's affidavit states, "[A]ffiant believes, based upon affiant's conversation with informant, affiant's personal observation of the appearance of the substance, and the manner in which the substance was packaged, that the aforementioned substance is *cocaine*." As we pointed out at oral argument, this statement seems to indicate that Baker (the affiant) saw the cocaine, when in fact it was the informant. We understand why officers may wish to employ a short-cut when applying for warrants. But we caution that this practice may ultimately result in evidence suppression at trial. Thus, it is with some reservation that we conclude that the state court commissioner did not err in issuing the warrant in this case.

However, even if probable cause was lacking, the evidence here still survives under the good faith exception of *United States v. Leon*, 468 U.S. 897 (1984). In *Leon*, the Supreme Court held that evidence seized pursuant to a subsequently invalidated search warrant need not be suppressed if the officers relied in good faith on the judge's decision to issue the warrant. *Id.* at 924. An officer's

decision to obtain a warrant is prima facie evidence that he was acting in good faith. *United States v. Otero*, 495 F.3d 393, 398 (7th Cir. 2007), *cert. denied*, 128 S. Ct. 425 (2007). A defendant can rebut this presumption by showing that (1) the judge issuing the warrant abandoned his detached and neutral role; (2) the officer was dishonest or reckless in preparing the affidavit; or (3) the warrant was so lacking in probable cause that the officer's belief in its existence was entirely unreasonable. *Id.*; *see also Leon*, 468 U.S. at 923.

Garcia focuses on the third method, arguing that the officers could not have held an objectively reasonable belief that there was probable cause to search the apartment. In support of his theory, however, Garcia merely lists a series of "routine" questions, the answers to which, he contends, should have been included in the affidavit. He claims that because the affidavit "was nothing more than a sentence or two of non-boilerplate information," the officers executing the warrant could not have been acting in good faith. Only in his reply brief does Garcia attempt to bolster his argument by citing to case law or analyzing similar affidavits. Accordingly, he has fallen well short of meeting his burden to show that the officers could not have reasonably relied on the warrant in good faith.

Moreover, our case law indicates that the officers did act in good faith. In *United States v. Peck*, 317 F.3d 754 (7th Cir. 2003), for example, we found that the affidavit was not sufficient to establish probable cause, but the good faith exception applied. There, the affiant was an informant who had never worked with the police and wanted the defendant arrested because he was not paying for their child's diapers. Because her reliability

had not been established, she appeared in person to sign her affidavit, alleging that she saw the defendant with a "large" amount of crack cocaine and marijuana 2 days earlier. We concluded that the officers acted in good faith even though the informant provided minimal detail.

Our case is similar to, if not stronger than, *Peck*. In both cases, the warrants contained very timely information about the presence of drugs. But, unlike in *Peck*, there was no reason here to question the informant's reliability or motives. And the informant in our case explained how he was able to identify the substance as cocaine (he had been involved in drug sales in the past), unlike the informant in *Peck*. The informant here did not allege seeing a "large" amount of drugs at the apartment—which decreases the likelihood that they would still be on the premises a few days later—but this, standing alone, does not make the warrant plainly deficient.

In *Owens v. United States*, 387 F.3d 607 (7th Cir. 2004), however, we found that the warrant was so plainly deficient that even *Leon* could not save the search. There, the warrant was based on a "barebones" affidavit that stated that, 3 months earlier, an informant had bought "a quantity of crack" from the defendant at a house believed to be his residence. Notably, there was no indication of either the quantity of crack or the reliability of the informant.

*Owens* is distinguishable from our case. The information there was stale (3 months old), while the information here was fresh (3 days old); thus, it was more likely in our case that even a small quantity of drugs would still be on the premises when the search was conducted. And, as we previously mentioned, the reliability of the

informant in our case was established, unlike in *Owens*. These two major differences make *Owens* inapposite. Accordingly, even if probable cause was lacking, Garcia is not entitled to relief because the officers who conducted the search relied on the warrant in good faith.

For the foregoing reasons, the judgment of the district court is AFFIRMED.