In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3701

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

ANTWAN KENYA REED,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin
No. 2:10-CR-00080-RTR-1 — **Rudolph T. Randa**, *Judge.*

ARGUED MAY 31, 2013 — DECIDED MARCH 10, 2014

Before FLAUM, MANION, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Following a bench trial, Antwan Kenya Reed was convicted of possession with intent to distribute heroin, possession of a firearm by a felon, and possession of a firearm in furtherance of a drug trafficking crime. On appeal, he contends that there was no probable cause to issue the warrant that led to the discovery of certain evidence used against him at trial. He also maintains that the

district court abused its discretion in allowing the government to present the details of a ten-year-old conviction for heroin distribution, evidence he claims was used improperly to demonstrate his propensity for committing heroin-related crimes. Finally, he asserts that the evidence was insufficient to demonstrate that he possessed the guns or drugs seized from the home that was searched, or that he used the guns in furtherance of a drug trafficking crime. We affirm.

## I.

We begin with the warrant. On March 11, 2010, Milwaukee police officer Michael Wawrzyniakowski submitted an affidavit in support of an application for a search warrant for 3353 N. 27th Street in Milwaukee. In the application, the officer sought permission to search for heroin, guns, items affiliated with heroin or guns, and any other evidence that could be used to demonstrate control over the premises. In the affidavit supporting the application, the officer averred that a reliable confidential informant had informed him that Reed was using the N. 27th Street residence to store and sell heroin while armed with a large caliber handgun. The informant had seen Reed armed and delivering heroin at the home within the prior seventy-two hours. The officer stated that the informant knew from past experience that heroin is a white powdery substance packaged in foil packs or "bindles" for sale, and that the informant demonstrated to the officer his knowledge of the appearance and packaging of heroin. The informant told the officer that Reed armed himself to protect against other drug dealers who reside in the same area.

The officer averred that he believed the informant to be credible because the informant provided detailed information in the past that led to the execution of a search warrant and the arrest of three individuals for possession of marijuana and cocaine base with intent to deliver. The informant also supplied a physical description of Reed and positively identified Reed through Milwaukee Police Department booking photographs. The informant previously had given the officer locations of drug houses resulting in recoveries of drugs and firearms by the officer and others, and had supplied the officer with accurate information regarding persons wanted on warrants and persons under probation or supervision. The officer confirmed that he corroborated the informant's information about Reed by verifying that Reed had a prior felony conviction for possession with intent to deliver heroin and that Reed was currently on probation for that very offense.

Reed contends that the affidavit was too vague and lacking in detail to support a finding of probable cause, and that the officer did virtually nothing to corroborate the informant's information other than confirming innocent details such as Reed's physical appearance and the location of the residence. He also contends that the officer omitted relevant information that contradicted the informant's account. For example, the officers had surveilled the home on N. 27th Street, had seen Reed only briefly and had not seen him engaged in any suspicious activity.[1] The district court determined that the

---

[1] Reed also suggests that the officer who filed the affidavit knew but did not reveal that Reed was barred from visiting the N. 27th Street residence

(continued...)

warrant was supported by probable cause and that, even in the absence of probable cause, the evidence would not be excluded because the officer acted in good-faith reliance on the warrant.

We need not consider whether the warrant was supported by probable cause because the good-faith exception to the exclusionary rule applies on these facts. *United States v. Leon*, 468 U.S. 897, 923 (1984); *United States v. Miller*, 673 F.3d 688, 693–94 (7th Cir. 2012). We review *de novo* a district court's finding that the good-faith exception of *Leon* applies to a particular warrant. *Miller*, 673 F.3d at 693; *United States v. Bell*, 585 F.3d 1045, 1052 (7th Cir. 2009). An officer's decision to obtain a warrant is *prima facie* evidence that the officer was acting in good faith. *Leon*, 468 U.S. at 921; *Miller*, 673 F.3d at 693. A defendant may rebut this evidence by demonstrating that (1) the issuing judge abandoned the detached and neutral judicial role; (2) the officer was dishonest or reckless in preparing the affidavit; or (3) the warrant was so lacking in probable cause that the officer could not reasonably rely on the judge's issuance of it. *Miller*, 673 F.3d at 688; *Bell*, 585 F.3d at 1052; *United States v. Garcia*, 528 F.3d 481, 487 (7th Cir. 2008).

Although the warrant application in this instance lacked certain details, the situation here is more comparable to *Garcia*

---

[1] (...continued)

because of a "no-contact" order that had been entered against him in a domestic dispute with a former girlfriend living at the home. Reed cites the testimony of the officer's partner that he (the partner) was aware of the no-contact order. Nothing in the record supports a suggestion that the officer who filed the affidavit knew and purposefully withheld this information from the court commissioner issuing the warrant.

than it is to *Owens v. United States*, 387 F.3d 607 (7th Cir. 2004), the case on which Reed largely relies. In *Owens*, the informant's information was three months old, compared to the seventy-two hour time frame here. And the affiant in *Owens* provided no information regarding the informant's reliability. The warrant application was a "bare bones" effort with minimal detail. Because of those major flaws, we found that the warrant was so deficient that no officer would reasonably rely on it, and the *Leon* exception did not apply. In *Garcia*, as in Reed's case, the information was only three days rather than three months old. The affidavit in *Garcia* and in Reed's case specified that the informant had provided reliable information to the police in the past, that the informant was familiar with the controlled substance at issue and had personally seen drugs at the location to be searched. In Reed's case, that information led to arrests and charges in one case, and the officer averred that other information the informant had provided in the past had later been corroborated. Officer Wawrzyniakowski's affidavit could fairly be described as thin, but as in *Garcia*, we think there was enough here for an officer to reasonably rely on the court commissioner's issuance of the warrant. *See also Miller*, 673 F.3d at 693–94 (applying the *Leon* exception to a warrant even though the application was written with generic details because the information was recent, based on first-hand observation, and likely against the informant's penal interest). Reed presents no evidence that the court commissioner abandoned his neutral role or that the officer was reckless or dishonest in preparing the affidavit. We therefore affirm the district court's decision to admit the evidence discovered in the search of the N. 27th Street residence.

## II.

Reed also challenges the court's admission of the details of his prior conviction for possession of heroin with intent to distribute. In the instant case, Reed was similarly charged with possession with intent to distribute heroin as well as being a felon in possession of a firearm and using a firearm in furtherance of a drug trafficking crime. For the purposes of the felon-in-possession charge, he stipulated to the existence of a prior qualifying felony. The government nevertheless moved *in limine* to admit the details of Reed's prior heroin-related conviction. The government contended that evidence of the prior crime would be offered to demonstrate Reed's intent, knowledge and lack of mistake. The district court noted that a bench trial eliminates the risk that a jury will be unduly influenced by inappropriate evidence, and that the court would apply its experience and expertise to analyze the evidence when it was introduced. The court agreed that the evidence could be relevant to the issues of intent, motive, and lack of mistake.

Over Reed's objection, Milwaukee police officer Jon Osowski testified that Reed had previously been convicted of "[p]ossession with intent, heroin, less than three grams, with the enhancer of use of bulletproof garment as a second subsequent drug offense." Tr. at 135. The officer also testified that, on the day Reed was arrested for that prior offense, police officers were responding to a complaint of "shots fired" when they encountered Reed along with several other men. Officer Osowski stated that Reed ran when he saw the police officers, stopped on their command, but refused to put his hands in the air. Instead, the officers saw him toss an object into the brush.

An officer retrieved the object, which turned out to be fifty-two foil packets of heroin totaling 2.87 grams.

During Officer Osowski's testimony, Reed renewed his objection to this evidence, arguing that the undue prejudice greatly exceeded any probative value. This time, the court noted that Reed had already stipulated to the conviction, that the evidence was admitted for the reasons previously stated, but that the defense had an "appropriate concern" as to the level of detail required for the government's purposes. The court then counseled the government not to explore the prior offense conduct in detail because it would be a waste of time. The government asked no further questions of Officer Osowski.

In its post-trial brief, the government discussed Reed's prior felony conviction, emphasizing that on both occasions, Reed was found with dozens of foil bindles containing heroin:

> Finally, Reed's previous felony conviction in 2001 for possession with intent to distribute a controlled substance, which involved 52 foil bindles containing heroin, dispels any doubt that he was unaware of what was going on at the home. Recall that 39 foil bindles containing heroin were recovered from the top of an end table in the master bedroom. Taken together, all the evidence in this case demonstrates that Reed's home was on N. 27th Street, not any-place else, and that he knowingly distributed heroin from that residence.

R. 47, at 16. In his own post-trial brief, Reed pointed out a number of deficiencies in the government's evidence, focusing

on a lack of direct evidence proving that he lived in the home, knew about the heroin found in the master bedroom, or exerted any control over the drugs or guns found in the home. He instead pointed to Vera Sims, his former girlfriend, who lived at the home and was found in the master bedroom where the heroin and one of the guns were located. Sims had pled guilty to a drug crime in state court, and Reed noted that, at best, weak circumstantial evidence connected him to the contraband.

The court, in its final ruling, mentioned the prior conviction only once. The court first recounted the extensive evidence connecting Reed to the residence itself and to the master bedroom in particular, including a change of address form listing the N. 27th Street address, a significant amount of mail addressed to Reed, an appointment card for a home visit from his probation officer (found under the mattress of the bed in the master bedroom), two jackets belonging to Reed in the closet of the master bedroom (one of which contained $300 in cash), an address book, a default judgment for a speeding ticket, a job application and photos of Reed (including a photo showing Reed wearing one of the coats found in the master bedroom closet). Reed had been observed letting the dogs out on the morning of the search, and had been seen at the residence on at least two prior occasions. When arrested on the day of the search, Reed was wearing slippers, and he asked an officer to retrieve his shoes from the master bedroom, where they were found in close proximity to the nightstand where some of the heroin was discovered. Reed, who was unemployed, had $420 in cash in his pockets, this in addition to the $300 found in his jacket hanging in the master bedroom closet.

In the context of detailing this litany of evidence, the court addressed Reed's prior conviction:

> All of this coupled with the evidence that the tin foil packaging was consistent with Reed's prior offense for drug distribution (prior conviction was stipulated to by Reed and the government (Ex. 35)) the large amount of cash on the premises (Reed was unemployed) and the recorded phone calls from the jail (Exhs. 32 & 33) which show Reed's familiarity and concern with the residence and it contents establish beyond a reasonable doubt that Reed knowingly and intentionally possessed a controlled substance and that he possessed the controlled substance with an intent to deliver it. Second, this establishes that Reed was a convicted felon and in possession of a firearm which had traveled in interstate commerce.

R. 54, at 5–6.

We have recently clarified the proper role of 404(b) evidence and cautioned against its use without a complete analysis of the true probative value as compared to the undue prejudice. *See Miller*, 673 F.3d at 695–700. *See also United States v. Lee*, 724 F.3d 968 (7th Cir. 2013). In some instances, Rule 404(b) evidence is proffered to prove intent, knowledge or absence of mistake but only by raising an improper inference that the defendant had a propensity to commit the crime. We therefore cautioned that the court must carefully consider how the particular Rule 404(b) evidence will be used to prove

intent, knowledge or lack of mistake and make certain that it is not through the use of a propensity inference.

Reed was convicted in a bench trial and so the details of his prior conviction were not presented to a jury that would be far less equipped to understand the limitation against the use of propensity evidence. In "bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions." *Harris v. Rivera*, 454 U.S. 339, 346–47 (1981). *See also United States v. Stinefast*, 724 F.3d 925, 931 (7th Cir. 2013) ("Judges often hear improper argument and other forms of inadmissible evidence that they are presumed to disregard when deciding matters of importance."); *United States v. Shukri*, 207 F.3d 412, 419 (7th Cir. 2000) ("In a bench trial, we assume that the district court was not influenced by evidence improperly brought before it unless there is evidence to the contrary."). "To overcome this presumption of conscientiousness on the part of district judges, a party must present some evidence that the statement influenced the court's decision-making." *Stinefast*, 724 F.3d at 931.

In this instance, the district court judge considered the Rule 404(b) evidence only in the context of the similar packaging of the heroin. But in *Miller,* we noted that a prior conviction for cocaine possession could not be admissible merely because it was for the same crime and because it also involved drugs in small plastic bags. *Miller*, 673 F.3d at 699. "Pattern evidence *is* propensity evidence, and it is inadmissible unless the pattern shows some meaningful specificity or other feature that suggests identity or some other fact at issue." *Miller*, 673 F.3d at 699 (emphasis in original). In *Miller*, we found that crack cocaine packaged in plastic bags "is far too generic in drug

cases to make a pattern of two acts over eight years probative of anything beyond propensity." *Miller*, 673 F.3d at 699–700. The same can be said of heroin packaged in foil bindles. Indeed, Officer Wawrzyniakowski testified that he had participated in "hundreds, if not thousands" of drug and narcotics investigations in his fifteen years as a police officer, and that based on his experience, heroin is "typically … packaged in aluminum foil bindles." Tr. at 14. This evidence that Reed had previously been in possession of heroin packaged in foil bindles was too generic to have anything more than minimal probative value.

That said, we review the court's decision to admit or exclude evidence for abuse of discretion. *United States v. Simon*, 727 F.3d 682, 696 (7th Cir. 2013); *United States v. Thornton*, 642 F.3d 599, 604 (7th Cir. 2011). We will reverse and order a new trial only if any evidentiary errors are not harmless. *Simon*, 727 F.3d at 696; Fed. R. Crim. P. 52(a). Reed's defense did not truly involve questions of intent, knowledge or mistake in a manner that would make the use of his prior conviction probative on any of these issues. The court's use of this evidence of similar packaging was therefore questionable under our current case law. But in the context of the extensive list of evidence on which the district court relied to find that Reed exerted ownership over the heroin, we find that any error was harmless. Again, had the evidence come before a jury, we may have come to a different conclusion, but we presume that the court was not unduly influenced by this weak pattern evidence. We "can say 'with fair assurance' that the verdict was not substantially swayed by the error." *Miller*, 673 F.3d at 701 (citing *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)).

## III.

Reed's final challenge is to the sufficiency of the evidence on all three counts in the indictment. We will overturn a verdict for insufficiency of the evidence only if, after viewing the evidence in the light most favorable to the government, the record is devoid of evidence from which a rational trier of fact could find guilt beyond a reasonable doubt. *United States v. McIntosh*, 702 F.3d 381, 385 (7th Cir. 2012), *cert. denied*, 133 S. Ct. 1484 (2013); *United States v. Olson*, 450 F.3d 655, 664 (7th Cir. 2006).

The court cited enough evidence to support its conclusion that Reed constructively possessed the drugs and at least one of the guns found in the home. *See United States v. Caldwell*, 423 F.3d 754, 758 (7th Cir. 2005) (constructive possession exists when a person knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly, or through others). Mere proximity to contraband, however, is not enough to prove constructive possession. *United States v. Griffin*, 684 F.3d 691, 696 (7th Cir. 2012). Proximity must be coupled with other evidence, including connection with an impermissible item, proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise in order to sustain a guilty verdict. *Griffin*, 684 F.3d at 696.

In this case, Reed shared the residence with his girlfriend, Vera Sims, her two teenaged sons, her mother and, at times, another adult acquaintance. The heroin in this case was found on top of and inside of three nightstands adjacent to the bed in the master bedroom. One gun was discovered in a purse in the

closet of the master bedroom, near two of Reed's jackets. A second gun was recovered from the kitchen and a third was found in the basement. Ammunition for the gun found in the bedroom was located near the gun in the kitchen. The assault rifle discovered in the basement was next to several grams of marijuana. Calls that Reed made to Sims from jail after his arrest also tied him to the home, and some of the conversations appeared to relate to ongoing drug sales.

Other than the guns found in the basement and the kitchen, all of the physical evidence was found in close proximity to personal items belonging to Reed. As the government notes, Reed was at the house when the search warrant was executed, and had been seen there on numerous occasions in the week before the search. A considerable amount of Reed's personal mail was strewn about the house, including in the master bedroom in the very nightstands where the heroin was recovered. Personal identifiers implicating Reed were found in the purse from which the gun in the bedroom closet was recovered. The gun was a mere four feet from the nightstand containing heroin, steps from Reed's shoes. Sims admitted that she shared the bedroom with Reed, and a recent appointment card from Reed's probation officer was under the mattress of the bed in the master bedroom.

From this, the court could easily conclude that Reed lived at the house and shared the master bedroom with Sims. The heroin was found close to his clothing, shoes and other personal belongings. *See United States v. Irby*, 558 F.3d 651, 654 (7th Cir. 2009). As for the guns, even if there was not enough tying Reed to the guns in the basement or kitchen, there was enough in the record to tie him to the gun in the closet of the

master bedroom, and only one gun was needed for the section 922(g)(1) conviction. *See United States v. Buchmeier*, 255 F.3d 415, 428 (7th Cir. 2001) (it is sufficient for the finder of fact to conclude that the defendant possessed any one of the guns charged in the indictment to sustain a conviction under the felon-in-possession statute); 18 U.S.C. §§ 922(g)(1) and 924(e). *See also United States v. Alanis*, 265 F.3d 576, 592 (7th Cir. 2001) (in joint residency case, husband may be found to constructively possess gun together with wife when the gun was found in the nightstand next to the husband's bed with his eyeglasses, clothing and wallet nearby). That gun, in addition to being found near numerous personal items belonging to Reed, was located in close proximity to $5000 worth of heroin. Together with the other evidence in the record (including the calls from the jail), that is enough to sustain the conviction for possession of a firearm in furtherance of a drug trafficking offense. *See United States v. Eller*, 670 F.3d 762, 765–66 (7th Cir. 2012), *cert. denied*, 132 S. Ct. 2728 (2012) (setting forth the factors used to analyze the sufficiency of the evidence in a section 924(c) case). On this record, we cannot say that the record is devoid of evidence from which a rational trier of fact could find guilt beyond a reasonable doubt. *McIntosh*, 702 F.3d at 385. The judgment is therefore

AFFIRMED.