In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-1938

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

EARL R. ORR,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:16-cr-20052 — **Sara Darrow**, *Chief Judge*.

ARGUED MAY 21, 2020 — DECIDED AUGUST 10, 2020

Before MANION, HAMILTON, and BRENNAN, *Circuit Judges*.

BRENNAN, *Circuit Judge*. A search warrant for illegal drugs at the home of Earl Orr led to his arrest for possessing a firearm as a felon. After a two-day trial, a jury found him guilty. Orr appeals a number of decisions made by the district court before and during that trial.

We conclude that the district court properly denied Orr's motion to suppress evidence. But Judge Bruce, who presided

over this case at trial, had engaged in improper ex parte communications with the U.S. Attorney's Office in other matters. That cast a pall over certain decisions in this case which required the exercise of substantial discretion. This was not harmless error, so we vacate Orr's conviction and remand for further proceedings before a different judge.

**I.**

In March 2016, a confidential source known as "Dave Bonz" told a member of the Champaign Police Department that he knew a crack cocaine dealer named Moe. Bonz had provided police with information on drug dealers in the past and had participated in three controlled buys. According to Bonz, Moe had sold him crack cocaine on several occasions. Each time, Bonz dialed a number ending in 1335 and Moe delivered the crack cocaine in a four-door maroon Mitsubishi registered in Illinois to Moe's girlfriend.

Over a few months, officers with the department conducted five controlled buys from Moe. Each time Bonz called Moe at the number ending in 1335 and bought crack cocaine from Moe or one of his associates using pre-recorded or marked money. Officers surveilled all five of the controlled buys, and three of the transactions were recorded with a covert video-recording device. During four of the controlled buys, officers watched a maroon Mitsubishi described by Bonz travel between the meet location and an apartment on Smith Road in Urbana, Illinois.

After reviewing the video footage, officers identified Moe as Earl Orr, who was on parole after being convicted of unlawful possession of a controlled substance with intent to deliver. Orr's identity was confirmed in three ways. First,

officers showed Bonz a picture of Orr from a law enforcement database, with all identifiers concealed. Bonz identified Orr as Moe. Second, officers tied the maroon Mitsubishi to Orr. Officers discovered that the Mitsubishi was registered to Jakaeya Biggers, and, after being presented with a copy of Biggers' driver's license, Bonz identified Biggers as "Moe's girlfriend." Third, officers linked the apartment on Smith Road to Orr. Both a law enforcement database and a list of tenants provided by the owner of the apartment revealed that Orr and Biggers lived together at the apartment on Smith Road.

The police filed for a search warrant of Orr's apartment and included an affidavit in which they described the information provided by Bonz, the corroboration performed by officers, and the controlled buys. A judge issued the search warrant and officers searched Orr's apartment. They found a .25 caliber semi-automatic pistol along with ammunition, approximately 22 grams of crack cocaine, approximately 15 grams of powdered cocaine, a digital scale, razor blades, and five boxes containing small Ziplock baggies. After officers arrested Orr and read him his *Miranda* rights, Orr voluntarily admitted that the gun and cocaine were his, and he reaffirmed ownership of those items during a second interview after the search. A grand jury later charged Orr with possessing a firearm as a felon in violation of 18 U.S.C. § 922(g), and his case proceeded to a jury trial. Because the gun was not found in Orr's actual possession, the prosecution's case centered on circumstantial evidence and Orr's confessions.

Before trial, Orr moved to suppress the evidence gathered from his apartment, asserting Bonz was an unreliable source. The district court denied Orr's motion. It found Bonz reliable and, in the alternative, that any defects in his credibility were

remedied through the controlled buys and the good faith exception outlined in *United States v. Leon*, 468 U.S. 897 (1984).

Orr and the government then moved in limine concerning the admissibility of the drug evidence recovered during the search and the controlled buys. The government argued the drug evidence proved Orr's motive for possessing the gun. Orr disagreed, asserting the drug evidence was irrelevant to the gun charge and unduly prejudicial. The district court granted the government's motion in limine and denied Orr's motion in limine. Even so, the district court conditioned the admissibility of the drug evidence on whether Orr placed his motive for possessing the gun at issue during trial. After Orr took the stand and testified that he did not have any reason to possess a firearm in response to a question asked by the government, the prosecutor and the defense attorney argued at sidebar about whether Orr had placed his motive at issue. The district court agreed with the government and ruled that Orr had placed it "squarely [] at issue" by claiming he had no reason to possess a firearm, so the prosecutor was allowed to present evidence of Orr's drug involvement. As a result of this ruling, a witness for the prosecution testified that Orr had drug dealing paraphernalia and "several thousand dollars['] worth of drugs" stored in his apartment. Following the close of evidence, the district court instructed the jury to consider this testimony only in the context of whether Orr had a motive to possess the gun.

Also during trial the district court permitted the prosecutor to cross-examine Orr on his prior conviction for unlawful possession with intent to deliver a controlled substance, to which Orr's counsel did not object. On this topic the court gave the jury another limiting instruction, directing them to

consider evidence of Orr's prior conviction only when evaluating the credibility of his testimony and whether he was a convicted felon at the time he was alleged to have possessed the gun.

The jury found Orr guilty. Before sentencing, the Judicial Council of the Seventh Circuit determined that the trial judge, Judge Bruce, had breached the Code of Conduct for U.S. Judges by engaging in improper ex parte communications in other cases with members of the U.S. Attorney's Office for the Central District of Illinois. *In re Complaints Against Dist. Judge Colin S. Bruce*, Nos. 07-18-90053, 07-18-90067 (7th Cir. Jud. Council May 14, 2019). Although the Judicial Council found no evidence that those communications affected the outcome of any case, the Council suspended Judge Bruce from all criminal matters involving the U.S. Attorney's Office for the Central District of Illinois for one year. *Id.* Accordingly, Orr's case was transferred to another judge for sentencing and Orr received 210 months of imprisonment.

## II.

Orr raises a number of issues on appeal. He argues the district court erred by denying his pretrial motion to suppress the evidence gathered from his apartment. He also submits that the district judge should have recused himself because of his ex parte communications with the U.S. Attorney's office in other cases. He further challenges the admission of drug evidence under Federal Rule of Evidence 404(b) and the

allowance of cross-examination questions about his prior fel-
ony conviction. We begin with the suppression ruling.

### A. The Motion to Suppress

Orr contends the search warrant was not supported by
probable cause because Bonz was neither credible nor relia-
ble. Orr's argument fails, however, because the affidavit es-
tablished probable cause and, in the alternative, the good faith
exception in *Leon* applies.

Under the Fourth Amendment, warrants may not be is-
sued "but upon probable cause." U.S. CONST. amend. IV.
Probable cause exists when, considering the totality of the cir-
cumstances, there is a "fair probability that contraband or ev-
idence of a crime will be found in a particular place." *Illinois
v. Gates*, 462 U.S. 213, 238 (1983). To determine whether an is-
suing judge correctly determined that probable cause for a
search existed, district courts must give "'great deference' to
the issuing judge's determination so long as the judge had a
'substantial basis' for the finding." *United States v. Miller*, 673
F.3d 688, 692–93 (7th Cir. 2012) (citations omitted). This court
reviews the district court's probable cause determination de
novo but, like the district court, must also give "'great defer-
ence' to the conclusion of the judge who initially issued the
warrant." *United States v. Searcy*, 664 F.3d 1119, 1122 (7th Cir.
2011) (quoting *United States v. Garcia*, 528 F.3d 481, 485 (7th
Cir. 2008)).

When, as here, the information used to support a probable
cause finding is primarily derived from an informant's tip,
"the legitimacy of [the] probable cause determination turns
on that '[informant]'s reliability, veracity and basis of
knowledge.'" *United States v. Olson*, 408 F.3d 366, 370 (7th Cir.

2005) (quoting *United States v. Johnson*, 289 F.3d 1034, 1038 (7th Cir. 2002)). Courts assess an informant's credibility by considering: "(1) the degree of police corroboration; (2) the informant's firsthand knowledge; (3) the detail provided; (4) the time between the reported events and the warrant application; and (5) whether the informant appeared before the judge." *United States v. Haynes*, 882 F.3d 662, 665 (7th Cir. 2018) (citing *United States v. Johnson*, 655 F.3d 594, 600 (7th Cir. 2011)). We review how those factors were considered.

First, the extensive police corroboration detailed in the affidavit strongly supports the issuing judge's probable cause determination. Officers linked the maroon Mitsubishi and apartment on Smith Road to Orr and his girlfriend. Officers also determined that Orr had a prior conviction for dealing drugs. *See United States v. Bell*, 585 F.3d 1045, 1053 (7th Cir. 2009) (deciding that a defendant's prior conviction for a drug-related crime helped establish probable cause for a drug-related search). Most importantly, however, Orr sold crack cocaine to Bonz while under police surveillance. "Generally, a controlled buy, when executed properly, is a reliable indicator as to the presence of illegal drug activity." *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006) (footnote omitted). Here, officers conducted not one but five controlled buys in the month before the search warrant's execution. Over the course of these controlled buys, officers watched Orr as he sold substances to Bonz, confirmed those substances contained cocaine base, and observed the maroon Mitsubishi traveling between Orr's apartment and the pre-arranged deal locations. Even though Bonz did not report seeing crack cocaine in Orr's house, these facts are strong evidence that Orr stored crack cocaine in his apartment. *See Haynes*, 882 F.3d at 666 (finding "a 'fair probability' that the [defendant's] house

contained evidence of illegal activity" after the defendant left his house, sold crack cocaine to an informant, and then returned to his house).

Next, on the second and third factors, Bonz had firsthand knowledge of Orr's drug dealing, and he shared that knowledge in detail with police. Nevertheless, Orr argues the affidavit was deficient because Bonz never described Orr's identifying features, the quantity of drugs he believed was on Orr's person, or the quantity of drugs he believed was at Orr's residence. None of these arguments are persuasive. Although Bonz first described Moe only as a Black male, that description is not problematic because Bonz later identified Moe as Orr when presented with a picture of Orr from a law enforcement database. Nor does the affidavit's failure to mention the quantity of cocaine possessed by Orr on his person or in his residence pose a problem. Precedent does not require a confidential informant to provide officers with every detail of illicit conduct. *See United States v. Garcia*, 528 F.3d 481, 485–86 (2008) (concluding affidavit established probable cause despite failing to mention how much cocaine was seen by the informant). Here, Bonz gave officers Orr's telephone number and described how Orr delivered cocaine. On these facts, the second and third factors support a probable cause finding.

The fourth factor concerns timing. The last controlled buy occurred within days of the search. Our court has found similar timeframes support probable cause findings under the fourth factor. *See, e.g.*, *Searcy*, 664 F.3d at 1122 ("This information was [] transmitted within a relatively short period of time—72 hours—before the application for the search warrant and certainly was not stale."); *Garcia*, 528 F.3d at 487 ("The information here was fresh (3 days old)."). Therefore, the time

between the last controlled buy and the search supports a probable cause finding. But the fifth factor weighs against probable cause. Bonz did not testify in front of the issuing judge, depriving the judge of the opportunity "to evaluate the informant's knowledge, demeanor, and sincerity." *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002).

Because four of the five factors support a probable cause determination, a reasonable fact finder could conclude that the warrant affidavit set forth facts to establish probable cause. And if the affidavit was deficient in some respect, namely Bonz's failure to testify, the controlled buys provide strong enough corroboration to support a probable cause finding. *See Haynes*, 882 F.3d at 666 ("A properly executed controlled buy can establish probable cause, even when the tip that prompted it might not have been reliable."); *United States v. Brack*, 188 F.3d 748, 756 (7th Cir. 1999) ("[A] deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability.").

Even if the affidavit for the search warrant failed to establish probable cause, the good faith exception in *Leon* provided alternative grounds to reject Orr's suppression motion. Under the good faith exception, "[a] facially valid warrant issued by a neutral, detached magistrate will be upheld if the police relied on the warrant in good faith." *United States v. Peck*, 317 F.3d 754, 757 (7th Cir. 2003) (citing *Leon*, 468 U.S. at 914, 922-23). The district court found that Officer Cully Schewska, who swore out the affidavit, relied on the search warrant in good faith, and we review that determination de novo. *See Sidwell*, 440 F.3d at 869.

Officer Schewska's decision to obtain a search warrant is prima facie evidence of good faith. *See Leon*, 468 U.S. at 920

n. 21. Orr may rebut this presumption by showing that the issuing judge "wholly abandoned his judicial rule" or that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Olson*, 408 F.3d at 372 (quotation marks omitted) (citing *Leon*, 468 U.S. at 914, 923)). Orr's sole argument here is that Officer Schewska's reliance on the warrant was unreasonable because he omitted mention of Bonz's history of criminal behavior and substance abuse in the affidavit. But even if such omissions were significant, the warrant affidavit contained extensive corroboration, referenced detailed information gathered firsthand by Bonz and Champaign police officers, and referred to a controlled buy that occurred only days before. Given these details, no reasonable officer would have believed the search of Orr's apartment was unconstitutional. Therefore, the district court correctly rejected Orr's argument under *Leon*.

### B. The Judicial Recusal Statute

Orr next argues he is entitled to a new trial because the trial judge's ex parte communications with the prosecuting U.S. Attorney's Office violated 28 U.S.C. § 455(a), the judicial recusal statute. Under § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.''

Although the government concedes Judge Bruce's conduct violated this statute, it argues that any error was harmless. "Not every violation of § 455(a) warrants a drastic remedy, like a new trial." *United States v. Williams*, 949 F.3d 1056, 1063 (7th Cir. 2020). Mere appearance of impropriety is not enough for reversal and remand—a party must show a

risk of harm. *See id.* (citing *In re Bergeron*, 636 F.3d 882, 883 (7th Cir. 2011)). To determine whether Judge Bruce's violation is harmless, we consider the three factors announced in *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988): (1) "the risk of injustice to the parties in the particular case," (2) "the risk that the denial of relief will produce injustice in other cases," and (3) "the risk of undermining the public's confidence in the judicial process." *Id.* at 864; *see Williamson v. Indiana Univ.*, 345 F.3d 459, 464 (7th Cir. 2003) (applying the *Liljeberg* factors to claim under § 455(a)).

Before applying the *Liljeberg* factors, we provide more background. This is not the first case to come before our court arising out of Judge Bruce's ex parte communications. In *United States v. Atwood*, 941 F.3d 883 (7th Cir. 2019), our court reviewed Judge Bruce's sentencing of a defendant after he pleaded guilty to federal drug crimes. *Id.* at 884–85. Atwood argued that because of Judge Bruce's ex parte communications in other cases, he was entitled to resentencing. *Id.* at 885. We vacated Atwood's sentence and remanded his case for resentencing by a different judge. *Id.* at 886. We ruled that all three *Liljeberg* factors counseled remand "[b]ecause of [Judge Bruce]'s broad discretion in sentencing." *Id.* at 884–86.

In *United States v. Williams*, 949 F.3d 1056 (7th Cir. 2020), we decided whether Judge Bruce's ex parte communications in other cases entitled Williams, a criminal defendant, to a new trial. *Id.* at 1063–66. Judge Bruce presided over Williams's trial at which he was convicted, but the case was transferred to another judge for sentencing. *Id.* at 1064. Unlike the defendant in *Atwood*, Williams did not show that Judge Bruce made any decisions that involved broad discretion. All pre-trial and trial rulings in *Williams* were "minimal" and "none [were]

challenge[d] on appeal." 949 F.3d at 1064. And because Williams was sentenced by another judge, he was unable to argue that Judge Bruce exercised discretion in sentencing as in *Atwood*. *See Williams*, 949 F.3d at 1064 ("Judge Bruce did not preside over Williams's sentencing hearing. This distinction matters because judges generally have more discretion over sentencing than the outcome of a jury trial."). Although we affirmed Williams's conviction after finding that all three of the *Liljeberg* factors suggested Judge Bruce's § 455(a) violation was harmless error, we clarified that the first and third *Liljeberg* factors could have come out differently had Judge Bruce issued discretionary rulings. *Williams*, 949 F.3d at 1064-65.

Like the defendant in *Williams*, Orr appeals his conviction after a jury trial presided over by Judge Bruce. But unlike the defendant in *Williams*, Orr challenges three seemingly discretionary decisions by Judge Bruce: the denial of the motion to suppress, the admission of drug evidence under Federal Rule of Evidence 404(b), and the allowance of cross-examination questions about Orr's prior felony conviction.

A few months before trial, Judge Bruce issued the order denying Orr's motion to suppress the evidence recovered during the apartment search. While Orr contends Judge Bruce's suppression ruling was a close discretionary call, we disagree. As discussed above, four of the five factors our court uses to determine an informant's credibility and reliability strongly supported the district court's probable cause finding. The five controlled buys, all of which occurred under police surveillance, provided persuasive evidence that a search of Orr's apartment would reveal controlled substances. Even more, the good faith exception created in *Leon* furnishes a

compelling and alternative rationale for denying Orr's motion to suppress. Given the manifest facts and applicable law, Orr's appeal of the district court's suppression ruling fails to present a colorable claim. Because no reasonable district court would have reached a different result, the suppression ruling here required little discretion and it does not affect our analysis of this case under *Liljeberg*.

But Orr's challenges to two of Judge Bruce's trial decisions are a different matter. The first was the district court's admission into evidence of drugs and drug paraphernalia gathered during the controlled buys and search of Orr's apartment. When deciding this question before trial, this was not a difficult choice in the event Orr placed his motive at issue. This court had already decided—in a similar case Judge Bruce relied on—that such evidence is admissible under Federal Rule of Evidence 404(b). *See United States v. Schmitt*, 770 F.3d 524, 534 (7th Cir. 2014) ("[T]he evidence proffered by the government was relevant to motive. The testimony that [the defendant] was a drug dealer and that drugs were found in his home when he was arrested was relevant to suggest to the jury why he would have a firearm.").

But when Orr said he had no reason to own a firearm, Judge Bruce made a close discretionary call by deciding that Orr placed his motive at issue. While Orr was on the witness stand the prosecutor asked: "You didn't have any reason to possess a firearm?" Orr responded: "I haven't, I haven't touched a firearm in 25 years, sir." "[B]ased upon [Orr's] answers, … tone[,] and manner," the district court determined Orr placed his motive at issue. Yet given this exchange, whether Orr or the prosecutor placed motive at issue is not a simple question. As Orr points out on appeal, he denied

having a reason to possess a firearm *in response to* the prose-cutor's questioning. Orr asserts the prosecutor placed motive at issue when he asked Orr if he had any reason for possessing a firearm. The parties dispute who opened the door to admit-ting the drug evidence, and this evidentiary ruling involved a substantial amount of discretion.

The second close discretionary call the district court faced was when the prosecutor asked Orr if he had been convicted of dealing drugs and if that conviction should affect his cred-ibility. The district court permitted the prosecutor's line of questioning but cautioned him not to "get into a prejudicial area" by "overplay[ing] it." Although the parties on appeal characterize the government's inquiry as potentially falling under the "motive" exception of Federal Rule of Evidence 404(b), the questioning likely occurred within the parameters of the impeachment exception contained in Federal Rule of Evidence 609. The district court issued a pre-trial order clari-fying that Orr's prior conviction could not be introduced to prove motive, and the prosecutor mentioned Orr's prior con-viction only in the context of impeaching him. Further, the jury was instructed to consider Orr's prior conviction only when deciding the credibility of his testimony and whether he was a felon at the time he possessed the gun. All of these facts indicate the district court permitted the prosecutor to im-peach Orr under Rule 609.[1] But regardless of which rule the questioning occurred under, the district court exercised sub-stantial discretion by weighing the probative value and

---

[1] Because the district court only briefly addressed the prejudicial effect of the prosecutor's questioning, it is difficult to conclusively determine whether the district court applied the stricter balancing test contained in Rule 609(a)(1)(B) or more lenient balancing test in Rule 403.

prejudicial effect of the questioning and by allowing the questioning to proceed.

So two discretionary rulings distinguish this case from *Williams*. The pre-trial and trial rulings in *Williams* were routine, granted in favor of both parties, uncontested on appeal, and not overly prejudicial to the defendant. *See Williams*, 949 F.3d at 1064. The two discretionary rulings in this case were non-routine, decided in favor of the government, and challenged on appeal. Notably, both rulings in this case significantly aided the prosecution. In the first, the district court permitted the prosecutor to introduce evidence that Orr stored drug-dealing paraphernalia and "several thousand dollars['] worth of drugs" in his apartment. As a result of the second, Orr was not only impeached on his felony conviction but the jury was presented with evidence that he was convicted of dealing drugs. Because this case centered on circumstantial evidence and credibility determinations, both decisions prejudiced Orr. With these discretionary decisions in mind, we turn to the *Liljeberg* factors.

The first *Liljeberg* factor requires us to consider "the risk of injustice to the parties." *Liljeberg*, 486 U.S. at 864. We start with the potential injustice Orr may suffer if we upheld his conviction. The record suggests that upholding Orr's conviction would create a tangible risk of unfairness to him. Because of the discretionary calls described above, it is possible the district court's personal biases influenced the outcome in this case. *See Atwood*, 941 F.3d at 885. For the first factor, though, we must also consider the risk of injustice to the government if a new trial is granted. Retrying this case would likely require the government to "spend valuable time and money … thereby diverting resources from other cases."

*Williams*, 949 F.3d at 1065. Even so, the risk of injustice to the government is directly related to the complexity of the trial. *See United States v. Cerceda*, 172 F.3d 806, 815 (11th Cir. 1999) (en banc) (per curiam) ("[T]he government would face great hardship if forced to conduct a new trial [] because of the complexity of the case (a 78 count, complex white-collar prosecution the trial of which lasted two-and-a-half months)."). We conclude that the risk of injustice to the government in this matter is relatively slight due to the straightforwardness and brevity of the prosecution's case. Orr faced one charge, and the trial lasted only two days. On these facts, the risk of injustice Orr faces if we do not vacate his conviction is greater than the risk of injustice the government faces if we upheld Orr's conviction. So the first *Liljeberg* factor favors Orr.

Under the second *Liljeberg* factor, we look to "the risk that the denial of relief will produce injustice in other cases." *Liljeberg*, 486 U.S. at 864. The parties in this case raise the same arguments as in *Williams*. 949 F.3d at 1065. The government contends no further action is necessary to induce other judges to exercise caution in their communications because Judge Bruce was thoroughly investigated, those results were adopted by the Judicial Council, he was publicly reprimanded, and he has implemented new practices to prevent similar issues in the future. Orr, on the other hand, argues these facts are not enough to ensure judges exercise more caution in the future and that further action must be taken. In *Williams*, we balanced these arguments and decided that the second *Liljeberg* factor counsels against awarding relief. 949 F.3d at 1065. *But see Atwood*, 941 F.3d at 885 (finding the second *Liljeberg* factor counsels in favor of resentencing). Because no reason is provided as to why the *Williams* decision was

erroneous on this point, we conclude this factor favors up-holding Orr's conviction.

The third *Liljeberg* factor requires us to consider "the risk of undermining the public's confidence in the judicial pro-cess." *Liljeberg*, 486 U.S. at 864. Like the defendant in *Williams*, Orr was found guilty by a jury of his peers. Although in *Williams* we decided that the jury finding the defendant guilty was "significant," we envisioned "a case where a judge has substantial discretion and his rulings have a significant im-pact on the outcome, thus undermining the public confidence in the judicial process." 949 F.3d at 1065. Such a case is now before us. Judge Bruce exercised substantial discretion by ad-mitting evidence of Orr's drug dealing and by permitting the prosecutor to cross-examine Orr on his felony conviction for dealing drugs. These evidentiary decisions were particularly consequential because they bolstered the prosecution's case, which rested on circumstantial evidence and credibility calls. Given these discretionary rulings, upholding Orr's conviction may damage the public's confidence in the impartiality of the judiciary. For these reasons, the final *Liljeberg* factor favors va-cating Orr's conviction.

The first and third *Liljeberg* factors support vacating Orr's conviction, so we cannot conclude the error in Judge Bruce not disqualifying himself from the case was harmless. Ac-cordingly, we vacate his conviction.[2]

---

[2] Because we remand for a new trial, we need not address Orr's other two arguments that the district court erred by admitting the drug evidence under Federal Rule of Evidence 404(b) and by allowing the prosecution to cross-examine him on his prior felony conviction.

### III.

For these reasons, we AFFIRM the district court's suppression ruling, VACATE Orr's conviction and sentence, and REMAND for further proceedings before a district judge other than Judge Bruce.