*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

**UNITED STATES**
Appellee

**v.**

**Ryan G. URIBE, Staff Sergeant**
United States Air Force, Appellant

**No. 20-0267**
Crim. App. No. 39559

Argued December 1, 2020—Decided February 9, 2021

Military Judges: Donald Eller Jr. and Mark F. Rosenow

For Appellant: *Captain Amanda E. Dermady* (argued); *Lieutenant Colonel Todd J. Fanniff* and *Major Rodrigo M. Caruço.*

For Appellee: *Major Jessica L. Delaney* (argued); *Colonel Shaun S. Speranza, Lieutenant Colonel Matthew J. Neil, Major Peter F. Kellett*, and *Mary Ellen Payne*, Esq. (on brief).

Judge OHLSON announced the judgment of the Court and delivered an opinion, in which Judge SPARKS joined. Judge MAGGS filed a separate opinion, concurring in the judgment, in which Senior Judge CRAWFORD joined. Chief Judge STUCKY filed a separate opinion concurring in part and dissenting in part.

———————

Judge OHLSON announced the judgment of the Court and delivered an opinion, in which Judge SPARKS joined.

The military judge and senior trial counsel in this case "became friends" approximately four years before Appellant's general court-martial. At trial the defense, joined by the Government, filed a motion to recuse the military judge because of this friendship but the military judge denied the motion. We granted review to determine "[w]hether the lower court erred in finding the military judge did not abuse his discretion in denying a joint motion to recuse." *United States v. Uribe*, 80 M.J. 269 (C.A.A.F. 2020) (order granting review). We hold that the military judge abused his discretion but that Appellant is not entitled to relief under *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988).

## I. Facts

Major (Maj) Rosenow became a member of the Air Force Judge Advocate General Corps (JAG Corps) in 2008. In July 2016 he became a military judge and was stationed at Travis Air Force Base, California.

On March 1, 2018, the Chief Circuit Military Judge of the Central Circuit, with the concurrence of the Chief Circuit Military Judge of the Western Circuit, detailed Judge Rosenow to Appellant's court-martial which was held at Joint Base San Antonio Lackland, Texas. Maj BJ, whose duty station also was Travis Air Force Base, served as senior trial counsel in Appellant's case. Therefore, both Judge Rosenow and Maj BJ traveled from their home duty station for temporary duty to participate in Appellant's court-martial.

Appellant's court-martial involved two contested Article 120, Uniform Code of Military Justice (UCMJ),[1] specifications alleging that Appellant sexually assaulted his ex-wife while they were married. During a Rule for Courts-Martial (R.C.M.) 802 telephonic conference with the parties, Judge Rosenow "outlined his previous interactions" with Maj BJ.

## A. Judge Rosenow's Friendship With Senior Trial Counsel

Judge Rosenow and Maj BJ first met in 2012, but their interactions were "limited" because although they were both senior trial counsel they were assigned to different duty stations. However, after the two were stationed together as senior trial counsel beginning in mid-2014, they "became friends." This friendship included Maj BJ attending Judge Rosenow's bachelor party in New York City in April 2015 and his wedding in June 2015.

Maj BJ became senior trial counsel at Travis Air Force Base in 2015, and Judge Rosenow was stationed as a military judge there in 2016. From the time they were both assigned to Travis Air Force Base to the time of Appellant's court-martial in 2018, Judge Rosenow and Maj BJ "hung out socially" with their significant others "roughly four times," and they got together socially without their significant others once.

---

[1] 10 U.S.C. § 920 (2012).

Further, although Maj BJ's girlfriend and Judge Rosenow's wife were "more of acquaintances than friends," Maj BJ's girlfriend was present for the birth of Judge Rosenow's children because Judge Rosenow was out of town when his wife went into labor prematurely and the couple did not have any other friends or family in the local area.

## B. Recusal Motion and Ruling

The day before the defense filed a motion for recusal, Maj BJ requested an R.C.M. 802 conference due to his "friendship" with Judge Rosenow. Maj BJ cited both parties' "concern[] about the perception of fairness of the proceedings, not only from the [Appellant's] perspective … but also from an outsider['s] as well." During this conference, Maj BJ expressed "his concern [with] the 'optics' of [Judge Rosenow] presiding over a case where [Maj BJ] appeared as counsel." Maj BJ also expressed "sympathy for [Appellant's] perspective in general." The next day the defense interviewed Maj BJ about his relationship with Judge Rosenow.

The defense then moved to recuse Judge Rosenow from Appellant's court-martial because of his "personal relationship" with Maj BJ. This relationship, the defense argued, would undermine, "at least in part, public confidence in the fairness of the trial." The Government did not oppose this motion and agreed with the motion's facts. Judge Rosenow "interpreted [the Government's position as] a joint request" for recusal because otherwise he "would insufficiently weigh the role the government took in raising the issue, the varying descriptions of its concerns across time and the shared need for both parties to receive a hearing free of doubts regarding the military judge's integrity and impartiality." Nonetheless, Judge Rosenow denied the parties' joint request for recusal.

## C. Court-Martial Proceedings

Following the recusal ruling, Appellant requested trial before a military judge alone, recognizing that Judge Rosenow would preside over the court-martial. Appellant also entered pleas of not guilty to the two Article 120, UCMJ, specifications. During the trial, Judge Rosenow ruled in the Government's favor on a defense Military Rule of Evidence (M.R.E.)

404(b) objection, but also ruled in the defense's favor by sustaining some defense objections and overruling Government objections.

After hearing the evidence in this case, Judge Rosenow acquitted Appellant of one sexual assault specification but convicted Appellant of a different sexual assault specification.

During the Government's sentencing argument, assistant trial counsel asked that Appellant be sentenced to a reduction to E-1, a dishonorable discharge, and confinement for three years. Judge Rosenow sentenced Appellant to a reduction to E-1, a dishonorable discharge, confinement for twenty months, and a reprimand. The convening authority approved this sentence.

## D. Court of Criminal Appeals

Appellant raised ten assignments of error at the United States Air Force Court of Criminal Appeals (CCA), including challenges to the military judge's recusal ruling and M.R.E. 404(b) ruling, and challenges to the factual and legal sufficiency of Appellant's conviction. The CCA summarily concluded that the M.R.E. 404(b) ruling did "not require further discussion or warrant relief." *United States v. Uribe*, No. ACM 39559, 2020 CCA LEXIS 119, at *3, 2020 WL 1896392, at *1 (A.F. Ct. Crim. App. Apr. 16, 2020) (unpublished). The CCA also determined that the evidence was legally and factually sufficient because there was "ample evidence to support Appellant's conviction," particularly Appellant's "own words on the recorded call[s]" effectively admitting to the misconduct. *Id.* at *27, *30, 2020 WL 1896392, at *9, *10. Thus, the CCA believed there was "compelling evidence of Appellant's guilt." *Id.* at *30, 2020 WL 1896392, at *10. With respect to the recusal issue, the CCA concluded that the military judge did not abuse his discretion, but even assuming that he did, the lower court concluded that reversal was not warranted under the Supreme Court's *Liljeberg* decision. *Id.* at *21–25, 2020 WL 1896392, at *7–9. Finding that none of the other issues warranted relief, the CCA affirmed the findings and sentence. *Id.* at *3, *50, 2020 WL 1896392, at *1, *18.

## II. Standard of Review

"Our review of a military judge's disqualification decision is for an abuse of discretion." *United States v. Sullivan*, 74 M.J. 448, 453 (C.A.A.F. 2015). "A military judge's ruling constitutes an abuse of discretion if it is 'arbitrary, fanciful, clearly unreasonable or clearly erroneous,' not if this Court merely would reach a different conclusion." *Id.* (quoting *United States v. Brown*, 72 M.J. 359, 362 (C.A.A.F. 2013)).

## III. Analysis

We conclude that the military judge abused his discretion when he denied the parties' joint recusal motion. However, after balancing the *Liljeberg* factors, we determine that Appellant is not entitled to relief. Our reasons for each conclusion are set forth below.

## A. Recusal

### 1. Applicable Law

We have recognized that the validity of the military justice system and the integrity of the court-martial process "depend[] on the impartiality of military judges in fact and in appearance." *Hasan v. Gross*, 71 M.J. 416, 419 (C.A.A.F. 2012) (per curiam). Therefore, actual bias is not required; an *appearance* of bias is sufficient to disqualify a military judge. *See United States v. Norfleet*, 53 M.J. 262, 270 (C.A.A.F. 2000). And in this appeal, the focus is indeed on the appearance of bias.

"In the military context, the appearance of bias principle is derived from R.C.M. 902(a) …." *Hasan*, 71 M.J. at 418. This rule provides: "[A] military judge shall disqualify himself or herself in any proceeding in which that military judge's impartiality might reasonably be questioned." R.C.M. 902(a). The test for identifying an appearance of bias is "whether a reasonable person knowing all the circumstances would conclude that the military judge's impartiality might reasonably be questioned." *Sullivan*, 74 M.J. at 453. This is "an objective standard." *Id.* "Recusal based on an appearance of bias 'is intended to promote public confidence in the integrity of the judicial process.'" *Id. at* 453–54 (internal quotation marks omitted) (quoting *Hasan,* 71 M.J. at 418).

"[T]his 'appearance standard does not require judges to live in an environment sealed off from the outside world.'" *Id.* at 454 (quoting *United States v. Butcher*, 56 M.J. 87, 91 (C.A.A.F. 2001)). Indeed, "[p]ersonal relationships between members of the judiciary and … participants in the court-martial process do not necessarily require disqualification." *Norfleet*, 53 M.J. at 270. However, the existence of "a social relationship creates special concerns which a professional relationship does not." *United States v. Wright*, 52 M.J. 136, 141 (C.A.A.F. 1999); *see also Sullivan*, 74 M.J. 454–55.

## 2. Discussion

In the instant case, the Government did not oppose the defense recusal motion at trial. In fact, Maj BJ, the very person whose relationship with the military judge was at issue, informed Judge Rosenow: "[*B*]*oth* sides are simply concerned about the perception of fairness of the proceedings, not only from the Accused's perspective …, but also from an outsider['s] as well." (Emphasis added.) This position led Judge Rosenow to "interpret[] [the Government's position] to mean this is a joint request," and in *Sullivan* we "caution[ed] military judges to be *especially circumspect* in deciding whether to disqualify themselves in such instances." 74 M.J. at 455 (emphasis added). As we will explain, Judge Rosenow was not "especially circumspect" when deciding the joint recusal motion concerning his friendship with Maj BJ.

To be sure, the world of career JAG Corps officers is relatively small and cohesive, with professional relationships the norm and friendships common. *See Butcher*, 56 M.J. at 91. Typically, these relationships do not rise to the level where a military judge must recuse himself or herself. *Norfleet*, 53 M.J. at 270; *Wright*, 52 M.J. at 141. Indeed, in examining this issue we are mindful of the fact that "[t]he interplay of social and professional relationships in the armed forces poses particular challenges for the military judiciary." *Butcher*, 56 M.J. at 91. Therefore, the proper focus of our inquiry is whether the relationship between a military judge and a party raises "*special* concerns," *Wright*, 52 M.J. at 141 (emphasis added), whether the relationship was "*so close or unusual* as to be problematic," *In re Hawsawi*, 955 F.3d 152, 161 (D.C. Cir. 2020) (emphasis added), and/or whether "the association *exceeds* what might *reasonably be expected* in light

of the [normal] associational activities of an ordinary [military] judge," *United States v. Murphy*, 768 F.2d 1518, 1538 (7th Cir. 1985) (emphasis added) (citation omitted) (internal quotation marks omitted).

As evidenced by the facts spelled out below, Judge Rosenow failed to recognize that his friendship with Maj BJ raised "special concerns." *Wright*, 52 M.J. at 141.

- Judge Rosenow and Maj BJ met in 2012 when they both served as senior trial counsel.

- In 2014, they were stationed together for approximately one year when they both served as senior trial counsel. They had both a professional and a personal relationship at that time.

- In April 2015, Maj BJ attended Judge Rosenow's bachelor party. We underscore that this was not a large, local affair where a number of JAG Corps members were invited. Rather, the party was limited to fifteen to twenty people, it was held in New York City, and the trial counsel may have been the only Judge Advocate Corps guest in attendance.

- In June 2015, the trial counsel attended Judge Rosenow's wedding.

- In mid-2016, Maj BJ and Judge Rosenow were stationed together. Despite the fact that Judge Rosenow was now a military judge, he continued to personally socialize with the trial counsel. In fact, Judge Rosenow and his wife "hung out socially" as friends with Maj BJ and his girlfriend four times, and Judge Rosenow and Maj BJ went out together socially one additional time.

- In February 2017, Judge Rosenow's wife went into labor prematurely and she asked Maj BJ's girlfriend to attend the birth at the hospital because Judge Rosenow was on temporary duty.

- In March 2018, Appellant's court-martial began.

We conclude that Judge Rosenow misapprehended the law in terms of the meaning and scope of R.C.M. 902(a) and the

applicability of the rule to this particular case.[2] Further, the fact that Judge Rosenow repeatedly personally socialized with Maj BJ—despite the fact that they both were stationed at the same air force base and Judge Rosenow was a military judge and Maj B was a trial counsel—brings into question Judge Rosenow's ability to objectively assess the nature of his relationship with Maj BJ.

First, Judge Rosenow characterized his social involvement with Maj BJ as being "relatively limited … professionally and socially." However, the facts cited above, particularly Maj BJ's invitations to Judge Rosenow's bachelor party and wedding, suggest otherwise. As the Government appropriately concedes, this "attendance at the military judge's bachelor[] party and wedding creates a closer call." Brief for Appellee at 11, *United States v. Uribe*, No. 20-0267 (C.A.A.F. Sept. 4, 2020). Also, Judge Rosenow mistakenly believed that his relationship with Maj BJ shared "commonality" with "so many [other] relationships derived from shared uniform service." However, we conclude that his friendship with Maj BJ went far beyond those typical "professional relationships" that we have described as "not *per se* disqualifying." *Wright*, 52 M.J. at 141; *see also infra* note 3.

Second, Judge Rosenow noted that there was "deliberate and increased separation" between the two of them after his military judge assignment. However, this increased separation should have begun immediately upon Judge Rosenow's appointment as a military judge at the same air force base where Maj BJ was stationed. Instead, during a time span of less than two years Judge Rosenow and Maj BJ continued their friendship by socializing with each other or their significant others (as compared to jointly attending larger professional social functions) a total of five times. Additionally, Maj

---

[2] We recognize that in deciding this matter Judge Rosenow referenced R.C.M. 902(a) and reaffirmed his obligation to be impartial. However, although this assurance is not irrelevant to the issue of whether there was an appearance of bias, it is more relevant to the issue of actual bias. *See Wright*, 52 M.J. at 141. Moreover, such an assurance from a military judge is just one factor that an objective observer would consider in determining whether that military judge's impartiality might reasonably be questioned.

BJ's girlfriend went to the hospital and was present for the birth of Judge Rosenow's children.

Third, although it is commendable that Judge Rosenow placed on the record all the facts about the relationship, this step did not erase the troubling nature of those facts.

And fourth, Judge Rosenow compared his friendship with Maj BJ "against the relationships and behaviors recounted in" a series of military justice cases and determined that "the overwhelming balance of precedent support[ed]" his decision not to recuse. However, upon close examination of the cited authorities, we note that none involved a friendship similar to the one between Judge Rosenow and Maj BJ.[3]

---

[3] Many of the cases cited by the military judge did not involve friendships between a military judge and a court-martial participant. Those cases cited by the military judge that did involve such friendships are easily distinguishable from Judge Rosenow's personal relationship with Maj BJ. *Compare Sullivan*, 74 M.J. at 454–55 (holding that military judge's "professional and routine" relationships with those involved in court-martial did not require recusal); *Butcher*, 56 M.J. at 92 ("assum[ing], without deciding, that the military judge should have recused himself" when in the midst of trial, he attended an informal farewell party for trial counsel and he played tennis with trial counsel); *Wright*, 52 M.J. at 142 (holding that recusal was not necessary based on military judge's "past [professional] relationship with" a law enforcement witness); *United States v. Sherrod*, 26 M.J. 30, 31 & n.2 (C.M.A. 1988) (holding military judge was disqualified where he lived next door to burglarized home and his daughter was close friends with the victim daughter of the burglary); *United States v. Cron*, 73 M.J. 718, 726–27 (A.F. Ct. Crim. App. 2014) (finding no basis for recusal where military judge and senior trial counsel were " 'Air Force friends' " but not "close friends" in that "they had never been to each other's houses, they had never been stationed together ..., [and] they had never spent any time alone together or emailed each other privately"); *United States v. Berman*, 28 M.J. 615, 616–18 (A.F.C.M.R. 1989) (en banc) (series of recusal cases involving first a friendship and then an intimate relationship between trial counsel and a military judge in which the lower court held the military judge "was disqualified"). The closest military justice case—*United States v. Hamilton*—only involved the statement by a third party indicating that a participant whose conduct was under review was "a good friend of the two appellate military judges and *may have played golf* with them on several occasions." 41 M.J. 32, 38 (C.M.A. 1994) (emphasis added). Appellant's case is distinguishable because it involves a

As can be seen then, Judge Rosenow and Maj BJ had formed a close personal bond that transcended the routine personal and professional relationships commonly found between a military judge and a party who appears before that military judge. Therefore, based not only on the frequency of their contact but also on the nature of the relationship, Judge Rosenow abused his discretion when he denied the joint recusal motion. Simply stated, granting this motion was necessary in order to maintain public confidence in the integrity and fairness of the military justice system because Judge Rosenow's impartiality in this case could "reasonably be questioned."[4] R.C.M. 902(a).[5]

## B. Liljeberg Factors

### 1. Applicable Law

When a military judge abuses his discretion in denying a recusal motion, we examine "whether, under *Liljeberg*, reversal is warranted." *United States v. Martinez*, 70 M.J. 154, 159 (C.A.A.F. 2011). "Because not every judicial disqualification requires reversal," the *Liljeberg* standard "determine[s] whether a military judge's conduct warrants that remedy to

military judge's friendship with a party (R.C.M. 103(16)(B)) and involves not speculation but undisputed agreement about the nature of Maj BJ's friendship with Judge Rosenow.

[4] As noted above, Judge Rosenow was detailed from the trial judiciary's Western Circuit to preside over a case in the Central Circuit. The record does not disclose any operational necessity requiring both Judge Rosenow and Maj BJ to continue participating in the same court-martial. Presumably other military judges could have replaced a recused Judge Rosenow.

[5] We are not persuaded that Appellant's decision to proceed to trial by military judge alone following Judge Rosenow's recusal ruling weighs against Appellant. We note that this decision is "a legitimate tactical choice." *United States v. Cornett*, 47 M.J. 128, 131 (C.A.A.F. 1997). This is so because "in order to avoid the hazards connected with a highly emotional trial …, [an] appellant [may be] willing to risk trial by (a 'disqualified') judge alone and *hope*[] that he would receive a fair trial." *United States v. Sherrod*, 22 M.J. 917, 922 (A.C.M.R. 1986), *reversed on other grounds and reasoning adopted by* 26 M.J. at 32 n.5. Here, the record suggests that Appellant's forum selection was based on this tactical decision. Thus, Appellant was merely making the best of a bad bargain.

vindicate public confidence in the military justice system." *Id.* at 158.

There are three *Liljeberg* factors. The first one examines if there is "any specific injustice that [the appellant] personally suffered." *Martinez*, 70 M.J. at 159. The second *Liljeberg* factor examines whether granting relief would "encourag[e] a judge or litigant to more carefully examine possible grounds for disqualification and to promptly disclose them when discovered." *Liljeberg*, 486 U.S. at 868. And the third *Liljeberg* factor uses an "objective standard" by determining whether "the circumstances of [a] case will risk undermining the public's confidence in the military justice system." *Martinez*, 70 M.J. at 159. Although "similar to the standard applied in the initial R.C.M. 902(a) analysis," the third *Liljeberg* factor "differs from the initial R.C.M. 902(a) inquiry" because it is not "limit[ed] … to facts relevant to recusal, but rather review[s] the entire proceedings, to include any post-trial proceeding, the convening authority action, the action of the [CCA], or other facts relevant to the *Liljeberg* test." *Martinez*, 70 M.J. at 160.

## 2. Discussion

We conclude that reversal is not required under the three *Liljeberg* factors. For the first factor, Appellant has not identified any specific injustice he suffered at the hands of this military judge. He points to a number of adverse rulings, but the mere fact that the military judge adversely ruled on some of Appellant's motions and objections does not necessarily demonstrate any risk of injustice.

Judge Rosenow's rulings did not exhibit personal bias on his part. And he did not rule uniformly in the Government's favor as he also sustained Appellant's objections. Appellant did not challenge most of Judge Rosenow's adverse rulings on appeal, and in regard to the one adverse ruling that Appellant did challenge, the CCA determined that this issue was "nonmeritorious." *Uribe*, 2020 CCA LEXIS 119, at *2–3, *23, 2020 WL 1896392, at *1, *8. The lower court also concluded that no error materially prejudiced Appellant's substantial rights. *Id.* at *50, 2020 WL 1896392, at *18; *see Marcavage v. Bd. of Trs. of Temple Univ. of the Commonwealth Sys. of Higher Educ.*, 232 F. App'x 79, 84 (3d Cir. 2007) (finding no

risk of injustice when the trial judge's rulings "were all correct" and there was "no prejudice … as a result of these rulings"). Further, nothing in the record demonstrates that Maj BJ sought to exploit his friendship with Judge Rosenow to obtain a favorable outcome for the Government. In fact, the military judge acquitted Appellant of one of the Article 120, UCMJ, specifications. *Cf. United States v. Elzy*, 25 M.J. 416, 419 (C.M.A. 1988) (explaining there was no prejudice to appellant from military judge's failure to recuse where "the military judge acquitted appellant of one of the charges"). Finally, the Government's case was strong with respect to the remaining specification because its evidence included Appellant's recorded admission.

For the second factor, Appellant did not pursue this point in his briefs and instead focused on the first and third *Liljeberg* factors. Because Appellant has not presented any argument on this point, we are convinced that it is "not necessary to reverse the results of the present trial in order to ensure that military judges exercise the appropriate degree of discretion in the future." *Butcher*, 56 M.J. at 93. Furthermore, our conclusion that Judge Rosenow abused his discretion will cause military judges in future cases to be appropriately mindful of their obligations under R.C.M. 902. *See Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 171 (3d Cir. 2004) ("[O]ur determination that a violation of [the recusal statute] occurred will provide virtually the same encouragement to other judges and litigants as would a remand.").

Finally, upon examination of the entire proceedings the third *Liljeberg* factor favors affirming the court-martial findings and sentence. As we noted above, Judge Rosenow acquitted Appellant of one Article 120, UCMJ, specification, which gives some assurance that an objective observer would still have confidence in the military justice system. Also, looking beyond the trial proceedings, we note that the CCA in its factual and legal sufficiency review determined that there was "compelling evidence" of Appellant's guilt, and we agree. *Uribe*, 2020 CCA LEXIS 119, at *30, 2020 WL 1896392, at *10. The lower court also found no merit in Appellant's other challenges to the court-martial proceedings. *Id.* at *2–3; 2020 WL 1896392, at *1. Further, in affirming the sentence, the CCA necessarily determined that the sentence was legally

correct and appropriate. *See* Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2012). A decision to affirm the findings and sentence under these circumstances would not upset public confidence in the judicial process. To the contrary, a decision to reverse the findings and sentence would increase the risk "that the public will lose faith in the judicial system." *United States v. Cerceda*, 172 F.3d 806, 815 (11th Cir. 1999) (en banc) (per curiam).

## IV. Judgment

Although we reach a different conclusion than the CCA with respect to the military judge's recusal ruling, we agree with the lower court that Appellant is not entitled to relief under the *Liljeberg* factors. Accordingly, we affirm the judgment of the United States Air Force Court of Criminal Appeals.

Judge MAGGS, with whom Senior Judge CRAWFORD joins, concurring in the judgment.

Rule for Courts-Martial (R.C.M.) 902 addresses the disqualification of military judges. The drafters of this provision sensibly recognized that there are certain specific circumstances that always require a military judge's disqualification. In R.C.M. 902(b), the drafters listed five such circumstances, which include situations in which the military judge previously acted as a counsel in the case, where the military judge will be a witness, where the military judge is closely related to a party, and so forth. The drafters of R.C.M. 902 also wisely understood that there might be other situations requiring disqualification that they could not capture with specific rules. They chose to deal with these other circumstances in R.C.M. 902(a) with an open-ended test that a military judge also "shall disqualify himself or herself in any proceeding in which that military judge's impartiality might reasonably be questioned."

One aspect of R.C.M. 902(a) is especially notable. The provision requires the military judge, not the parties or other judges, to decide whether the military judge should "disqualify himself or herself." The military judge must have discretion in making this decision because in many situations, fairminded observers might differ in their assessment of whether a military judge's impartiality "might reasonably be questioned." Appellate courts are therefore limited to considering whether the military judge committed an abuse of discretion in making the choice. *See United States v. Humpherys*, 57 M.J. 83, 88 (C.A.A.F. 2002).

Two important principles guide us when we consider whether a military judge has committed an abuse of discretion in deciding not to disqualify himself or herself under R.C.M. 902(a). First, "[t]here is a strong presumption that a judge is impartial." *United States v. Quintanilla*, 56 M.J. 37, 44 (C.A.A.F. 2001) (citation omitted). Second, a military judge "has as much obligation not to . . . [disqualify] himself when there is no reason to do so as he does to . . . [disqualify] himself when the converse is true." *United States v. Kincheloe*, 14 M.J. 40, 50 n.14 (C.M.A. 1982) (internal

quotation marks omitted) (quoting *United States v. Bray*, 546 F.2d 851, 857 (10th Cir. 1976).

In this case, I agree with the United States Air Force Court of Criminal Appeals (AFCCA) that the military judge did not abuse his discretion in concluding that, once all the facts and circumstances were known, there was no ground upon which his "impartiality might reasonably be questioned." *United States v. Uribe*, No. ACM 39559, 2020 CCA LEXIS 119, at *20–22, 2020 WL 1896392, at *7 (A.F. Ct. Crim. App. Apr. 16, 2020) (unpublished). The military judge therefore did not err in denying Appellant's motion for disqualification under R.C.M. 902(a). I would affirm the AFCCA's decision on this ground and would not reach the issue of prejudice.

## I. Abuse of Discretion Review

A military judge abuses his discretion (1) "when his findings of fact are clearly erroneous," or (2) when the military judge's "decision is influenced by an erroneous view of the law," or (3) when "the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." *United States v. Miller,* 66 M.J. 306, 307 (C.A.A.F. 2008) (citations omitted). To find an abuse of discretion under the last of these tests, this Court has required "more than a mere difference of opinion"; rather, the military judge's ruling "must be arbitrary, fanciful, clearly unreasonable or clearly erroneous." *United States v. Collier*, 67 M.J. 347, 353 (C.A.A.F. 2009) (internal quotation marks omitted) (citations omitted). In this case, applying this deferential standard of review, the military judge did not abuse his discretion in ruling on the disqualification motion. As described below, the military judge did not make any clearly erroneous findings of fact, did not misapprehend the law, and did not make unreasonable choices in applying the law to the facts.

### A. The Military Judge's Findings of Fact

The military judge made thorough findings of fact in his written ruling on the disqualification motion. These findings fall into three categories. First, the military judge adopted the facts stated in an appendix to Appellant's motion. This appendix recorded "every professional and social interaction

of substance between the senior trial counsel . . . and [the] military judge since their introduction [to each other] in 2012." Second, based on his personal knowledge, the military judge found "additional facts clarifying details" about the interactions described in the attachment. Third, also based on his personal knowledge, the military judge found additional facts about his past military assignments and how he was detailed to the court-martial in question. In this appeal, neither Appellant nor the Government argues that any of these findings of fact are clearly erroneous. Accordingly, the military judge's findings of fact in this case provide no basis for concluding that he abused his discretion in denying the disqualification motion.

## B. The Military Judge's Understanding of the Law

In his written ruling on the disqualification motion, the military judge stated the pertinent principles of law in eighteen detailed paragraphs. In these paragraphs, the military judge described the burden of proof, the accused's constitutional right to an impartial judge, and the specific requirements of R.C.M. 902. The military judge quoted R.C.M. 902(a), and noted that this provision tracks the language of 28 U.S.C. § 455(a). The military judge also quoted R.C.M. 902(b)(1), which requires a military judge to recuse himself if the military judge has any "personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts." In addition, the military judge quoted and discussed numerous precedents of this Court on the issue of disqualification. Neither Appellant nor the Government contends that the military judge stated any principles of law incorrectly or that he was influenced by an erroneous view of the law. Indeed, Appellant and the Government largely cite the same sources in their briefs to this Court. Accordingly, the military judge's view of the law also provides no basis for concluding that he abused his discretion in denying the disqualification motion.

## C. The Military Judge's Application of the Law

Given that the military judge did not make findings of fact that were clearly erroneous and that the military judge was not influenced by an erroneous view of the law, the military judge could have abused his discretion only if "the military

judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." *Miller,* 66 M.J. at 307. Appellant presents three arguments for concluding that the military judge indeed made such an unreasonable choice. In my view, however, none of these three arguments has merit.

First, Appellant argues that this case is distinguishable from prior cases in which this Court or the AFCCA determined that the routine professional relationship between a military judge and counsel did not require the military judge to recuse himself. *See, e.g., United States v. Sullivan,* 74 M.J. 448 (C.A.A.F. 2015); *United States v. Cron,* 73 M.J. 718 (A.F. Ct. Crim. App. 2014). In support of this contention, Appellant cites four key facts: (1) the senior trial counsel attended the military judge's out-of-town bachelor party; (2) the senior trial counsel attended the military judge's wedding; (3) the senior trial counsel's girlfriend went to the hospital and was present with the military judge's wife during the birth of their children; and (4) the military judge and the senior trial counsel personally socialized approximately four times with their significant others and once without their significant others during a two-year period before the court-martial.

These four facts, however, do not make the military judge's ruling under R.C.M. 902(a) "outside the range of choices reasonably arising from the applicable facts and the law." *Miller*, 66 M.J. at 307. As the Government points out, the bachelor party and the wedding took place about three years before the court-martial and well before the military judge had become a judge. Based on the timing of the events, the military judge reasonably could conclude that they would not cause members of the public to reasonably question his impartiality at the court-martial. *See Sullivan*, 74 M.J. at 454 (concluding that social interactions that had "occurred years prior to the court-martial" did not require disqualification). In addition, the undisputed finding of fact was that the presence of the senior trial counsel's girlfriend at the birth of the military judge's children was unplanned. The military judge was out of town on temporary duty when his wife prematurely went into labor. His wife asked the senior trial counsel's girlfriend for assistance because she did not know anyone else in the area to call. The military judge could reasonably conclude

that members of the public would not reasonably question his impartiality based on the extraordinary circumstances that led to this unplanned interaction between the senior trial counsel's girlfriend and the military judge's wife.

Finally, the military judge also could reasonably conclude that the few social interactions between him and the senior trial counsel, that took place at times removed from the court-martial, did not reasonably call his impartiality into question. We have not adopted a per se rule preventing social interactions between military judges and counsel. On the contrary, in *Sullivan*, we held that a military judge did not have to disqualify himself even though he had relationships with the appellant and military defense counsel that included a "social component." 74 M.J. at 454. Other jurisdictions follow similar rules. For example, the United States Court of Appeals for the Seventh Circuit stated:

> In today's legal culture friendships among judges and lawyers are common. They are more than common; they are desirable. A judge need not cut himself off from the rest of the legal community. Social as well as official communications among judges and lawyers may improve the quality of legal decisions. Social interactions also make service on the bench, quite isolated as a rule, more tolerable to judges. Many well-qualified people would hesitate to become judges if they knew that wearing the robe meant either discharging one's friends or risking disqualification in substantial numbers of cases. Many courts therefore have held that a judge need not disqualify himself just because a friend—even a close friend—appears—as a lawyer.

*United States v. Murphy*, 768 F.2d 1518, 1537 (7th Cir. 1985) (citing, inter alia, *In re United States*, 666 F.2d 690 (1st Cir. 1981)); *see also United States v. Butcher*, 56 M.J. 87, 91 (C.A.A.F. 2001) (recognizing that throughout a military career, a military judge, like any other officer, "is likely to develop numerous friendships as well as patterns of social activity" that "transcend normal duty hours").

To be sure, military judges and counsel must be sensitive to appearances at all times, and should limit social interactions at times when judicial business is pending. *See Butcher*, 56 M.J. at 91–92 (assuming without deciding that a military

judge should have disqualified himself after attending a party with trial counsel and playing tennis together on the eve of the court-martial). But the military judge reasonably could conclude in this case that the four unremarkable social interactions between him and the senior trial counsel, over a two-year period before trial, did not cross the line.

Second, Appellant argues that the military judge made an unreasonable choice because the Government did not oppose Appellant's disqualification motion. Appellant quotes our decision in *Sullivan*, which involved a joint motion for disqualification. This Court stated that a "'disinterested observer would have noted that the government joined the [accused's] motions for recusal—a very unusual development demonstrating that all parties were seriously concerned about the appearance of partiality.'" *Sullivan*, 74 M.J. at 455 (quoting *United States v. Amico*, 486 F.3d 764, 776 (2d Cir. 2007)). In *Sullivan*, however, we did not announce a per se rule that a military judge must recuse himself if both parties ask for disqualification. Indeed, we did not even require disqualification in that case. *Id.* A per se rule requiring disqualification whenever both parties request it would be contrary to R.C.M. 902(a)'s provision that the military judge makes the disqualification decision. In this case, the military judge was well aware of the Government's position, and he considered our statement in *Sullivan* about joint motions in his ruling. The choice that the military judge made was not unreasonable, even though both parties supported disqualification, because the facts did not provide any reasonable ground for questioning his impartiality.

Third, Appellant argues that the military judge incorrectly "focused more on whether he was actually biased instead of whether there was the appearance of bias." I agree that misapprehending the grounds on which disqualification is requested could very well lead to a decision outside the range of reasonable choices. In this case, however, Appellant's contention finds no support in the military judge's ruling. The military judge in this case understood that the Appellant was seeking disqualification on grounds that the public might reasonably question his impartiality and he specifically noted that actual personal bias, prejudice, or knowledge of disputed

facts was "not raised as a basis for disqualification by either party."

## II. Conclusion

When ruling on the motion to recuse himself, the military judge did not make any clearly erroneous findings of fact, he did not have an erroneous view of the law, and his application of the law to the facts was not unreasonable given all the circumstances. Accordingly, I agree with the AFCCA that the military judge did not abuse his discretion, and would affirm the AFCCA's decision on that ground.

Chief Judge STUCKY, concurring in part and dissenting in part.

"Judges, like Caesar's wife, should always be above suspicion. An impartial and disinterested trial judge is the foundation on which the military justice system rests, and avoiding the appearance of impropriety is as important as avoiding impropriety itself." *United States v. Berman*, 28 M.J. 615, 616 (A.F.C.M.R. 1989). I concur with the majority's conclusion that the military judge abused his discretion in refusing to recuse himself but respectfully dissent from the majority's holding that Appellant is not entitled to relief.

In *Liljeberg v. Health Servs. Acquisition Corp.*, the Supreme Court established a test for evaluating prejudice when a judge who is disqualified under 28 U.S.C. § 455(a) fails to recuse himself. 486 U.S. 847, 862, 864 (1988). Courts examine three factors: "the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." *Id.* at 864. But to this test, the Supreme Court added a caveat: "We must continuously bear in mind that to perform its high function in the best way justice must satisfy the appearance of justice." *Id.* (internal quotation marks omitted) (citation omitted).

Judge Rosenow was disqualified under Rule for Courts-Martial (R.C.M.) 902(a). As that rule is based on 28 U.S.C. § 455(a),[1] this Court has applied the three *Liljeberg* factors in evaluating prejudice in military disqualification and recusal cases. *See United States v. Witt*, 75 M.J. 380, 384–85 (C.A.A.F. 2016); *United States v. McIlwain*, 66 M.J. 312, 315 (C.A.A.F. 2008).

The Supreme Court did not fully explain in *Liljeberg* how to apply the three-factor test. In *United States v. Martinez*, this Court tried to clarify the first factor, equating it to whether the record supported, or the appellant had "identified[,] any specific injustice that he personally suffered under the circumstances." 70 M.J. 154, 159 (C.A.A.F. 2011). Although I joined the majority in *Martinez*, after rereading

---

[1] *Manual for Courts-Martial, United States*, Analysis of the Rules for Courts-Martial app. 21 at A21-50 (2016 ed.).

*Liljeberg*, I now find that explanation contrary to the plain language employed by the Supreme Court. The issue is not whether there was error or injustice but whether there was "the *risk* of injustice to the *parties*." *Liljeberg*, 486 U.S. at 864 (emphasis added).

I find the United States Court of Appeals for the Seventh Circuit's explanation of the first factor more persuasive. That court starts with the *potential* for injustice the accused may suffer in upholding the conviction by looking at whether the trial judge's personal bias could have influenced the court's discretionary rulings. *United States v. Orr*, 969 F.3d 732, 741 (7th Cir. 2020). It then balances that risk against the risk of injustice to the government if a new trial is ordered, which is determined by examining the time, money, and resources that would have to be diverted from other cases. *Id.*

The Seventh Circuit's explanation is consistent with the plain language of the *Liljeberg* test and makes sense. Rulings on discretionary issues have the most potential for injustice in disqualification cases because they are reviewed by appellate courts for an abuse of discretion, granting great deference to the disqualified judge's decisions. Cases in which the disqualified judge is required to assess the credibility of witnesses also have a high potential for injustice. *See id.* at 739–41. The risk is amplified in judge-alone trials, where the judge is required to determine an accused's guilt as well as exercise his broad discretion in adjudging the sentence. *See id.* at 739.

There was significant risk of injustice to Appellant in this case, as the military judge was required to make important discretionary rulings. Judge Rosenow was called upon to rule on defense motions to (1) admit, under exceptions to Military Rule of Evidence (M.R.E.) 412, evidence of the alleged victim's past consent to participate in the types of sexual acts for which he was charged; and (2) exclude evidence of Appellant's other acts under M.R.E. 404(b). Judge Rosenow granted in part and denied in part both motions. *United States v. Uribe*, No. ACM 39559, 2020 CCA LEXIS 119, at *2, 2020 WL 1896392, at *1 (A.F. Ct. Crim. App. Apr. 16, 2020) (unpublished).

More importantly, this was a judge-alone trial. Thus, Judge Rosenow was required to assess the credibility of the

witnesses, determine whether Appellant was guilty and, after finding him guilty, exercise his broad discretion in selecting an appropriate sentence. In this case that ranged from no confinement and a dishonorable discharge to a dishonorable discharge and confinement for thirty years. The defense counsel argued that Appellant did not represent a threat to the community and, therefore, should not be incarcerated. Nevertheless, the military judge sentenced Appellant to a dishonorable discharge, confinement for twenty months, reduction to the grade of E-1, and a reprimand.

On the other hand, the risk of injustice to the Government is very low. This was neither a long nor complicated trial. Appellant was charged with two specifications of sexually assaulting the same victim. The prosecution called few witnesses and, after excluding the sessions devoted to resolving motions, the record is not lengthy. A significant amount of time, money, and resources would not be required to retry Appellant. Although not specifically included in the *Orr* formulation of this factor, I have also considered the effect of requiring Appellant's wife to testify again. After balancing the two sides, I conclude that the first factor favors Appellant.

The second *Liljeberg* factor invites the Court to consider the risk that denial of relief would produce injustice in other cases. The Supreme Court did not explain this factor further, but in deciding *Liljeberg*, the Court seemed to invert its application. Rather than finding that the denial of relief would produce injustice in other cases, the Supreme Court found that "providing relief in cases such as this will not produce injustice in other cases." 486 U.S. at 868. Nevertheless, under the plain language of the second factor the risk of prejudice in other cases is very low, as it is doubtful Judge Rosenow will preside over other cases in which his friend is the prosecutor. Thus, this factor appears to favor the Government.

The third *Liljeberg* factor favors Appellant, as the military judge's social friendship with the prosecutor is precisely the appearance of impropriety that R.C.M. 902(a) was meant to prevent. In this case, a senior trial counsel was sent from a different circuit to Joint Base San Antonio to prosecute Appellant. After the chief judge of the circuit arraigned Appellant, he detailed a different military judge from a different circuit to preside over Appellant's court-martial. Of all the

military judges in the Air Force, he detailed the senior trial counsel's friend. During Appellant's trial, the military judge was called upon to make several discretionary rulings to which appellate courts would defer to his judgment, most importantly the findings and the sentence.

Under these circumstances, I conclude that Judge Rosenow's refusal to recuse himself prejudiced Appellant's substantial rights. He failed in his primary duty: to "serve as the independent check on the integrity of the court-martial process." *Hasan v. Gross*, 71 M.J. 416, 418–19 (C.A.A.F. 2012). Affirming Appellant's convictions and sentence does not satisfy the *Liljeberg* factors or the appearance of justice. Therefore, I would set aside the findings and sentence without prejudice.